Thank you, Judge Gregory, and may it please the Court. This case presents a number of questions, the first and most important of which is whether the agency erred in finding that authorities in El Salvador are able to control MS-13. I will, of course, address the question on which the Court sought supplemental briefing, but I do want to be clear that even if the Court disagrees with everything we say in our supplemental brief, we believe we should still win this case based on the arguments we made in the original briefs. And if the Court agrees with those arguments, it can leave for another day the arguments raised in the supplemental briefs. Now, at the outset, I would like to address a threshold issue that often gets overlooked in cases like this, which is how we should be measuring whether authorities are able to control a private actor or organization. Because no society is 100 percent crime-free, we, of course, concede that the mere fact that a gang or private organization is able to persecute an individual on one occasion does not by itself show that authorities are not able to control it. But by the same token, the fact that authorities respond to one particular incident does not show that authorities are able to control it. So in our view, to ask whether authorities are able to control a gang is to ask whether, as a general matter, they can prevent or deter the gang from terrorizing or persecuting people in the applicant's position. So, by analogy, if we were asking whether a teacher could control his or her classroom, the fact that a child threw a paper airplane on one day would be no more dispositive than the fact that the teacher sent another child to the principal's office on a different day. Those would simply be data points. To actually answer the question, you would have to observe the class for a period of time and measure the amount of time the teacher spent teaching versus the nature and number of disruptions by the students. If you prefer a football analogy, if you wanted to know which team controlled the line of scrimmage during a game, you couldn't simply watch one play. You would have to watch the entire game and then look at the statistics the next day. And so too here. Asking whether authorities are able to control a gang requires an overall assessment that focuses not simply on any one incident, but on the government's general ability to control a gang. So, here in the United States, for example, MS-13 operates in many cities, and it's been responsible for the murders of innocent civilians. But no one would say that authorities in the United States are unable to control MS-13 because the gang is not able to terrorize the general population in the same way that they do in El Salvador and other Central American countries. Counsel, how does that, those analogies are interesting and I'm trying to think them through, but I have a question about how they apply given that we do have a finding and the standard of review that we look after. I mean, so your analogies seem worth considering to the fact finder perhaps as that determination is made. But once the determination is made, don't we still apply the clear error standard of review on this? Well, yes, substantial evidence in the agency context. We don't dispute that the ultimate finding is subject to substantial evidence, but I would make two points. One, it's substantial evidence based on the record as a whole. And evidence is only as good relative to its weight to countervailing evidence. That's why Lady Justice is holding a scale. So, you know, we can't just look at the facts on which the immigration judge mentioned. We have to look at the record as a whole to see whether the record as a whole is supported by substantial evidence. And also isn't it slightly different than that? Isn't that we look to see if the evidence as a whole compels a different result? Yes, whether the evidence as a whole compels a different result. And the other point I was going to make is, as you, Your Honor, noted in North of Grumman in 2019, substantial review, substantial evidence review is not simply a rubber stamp. So even though it is deferential, it is not a rubber stamp. Now, as to the arguments that we made in the original briefs, the first was that the agency conflated authorities' willingness to control MS-13 with their actual ability to do so. And we think that's legal error that's subject to de novo review. Now, the IJ cited two reasons for finding that Salvadoran authorities can control MS-13. One, the police came to the scene of the murder in question and started an investigation. And two, they provided security at a funeral, at the funeral a few days later. But again, just as sending a student to the principal's office on one day doesn't show that a teacher can control their classroom as a general matter, sending a few police officers to the scene of a murder or the resulting funeral doesn't show that Salvadoran authorities can control MS-13 as a general matter. At most, it shows that they are willing to control MS-13. But being willing to control a private organization is simply a different question from being able to control a private organization. Why does the funeral example not illustrate ability, the fact that there were no — despite a threat that no men should go to the funeral, men went to the funeral, authorities came, and there was no incident? Well, the funeral at most could have lasted a few hours. So if my clients were eligible for 24-hour police protection, sure, we concede that having that protection there, they would be able to prevent the gang from attacking them. But my clients — no one except politicians and whatnot are eligible for that kind of protection. So the mere fact that the police were able to prevent — that MS-13 did not attack the police were present, I don't think that shows that as a general matter, if my clients returned to El Salvador, that they would be — receive comparable protection. Now we think that to determine, to resolve the ability question, the IJ should not have focused just on these incidents, but on the evidence and record as a whole, including my client's own testimony. And that leads to our second argument, which is that the IJ ignored virtually all of the evidence in the record. So to begin with, the IJ made no mention whatsoever of the expert declaration, which said that MS-13 is challenging the Salvadoran government for primacy, made no mention of a State Department report which said that the police are often hampered by inadequate funding and limited resources, and made no mention of a report from the Canadian government which said that gangs have infiltrated many state institutions, including the national police. And that evidence corroborated my client's own testimony, which the IJ found credible but didn't mention, that the members of MS-13 who threatened to kill him and his wife specifically said that they had sources inside the police station who would tell them if he cooperated with the authorities. So as this Court said in Portillo-Flores, the agency abdicates its responsibility when it completely ignores this kind of evidence. So we think at a minimum — But the Board's decision? You do look at both, although in this case I would note that the Board adopted — not simply affirmed, but adopted the IJ's decision at its own. But then it went on and gave additional reasoning. And on your point, it specifically said that it found that the specific information — I agree, I understand you challenged the sufficiency, it sounds like, of that information, the local information it cited. But it compared that against the general information. So at least at the Board level, the evidence you talk about was addressed, wasn't it? It may not be as fulsome as you would like, but it's addressed. This Court has said on many occasions that substantial evidence review requires the fact finder to build an accurate and logical bridge between the evidence and their conclusion. Here, we don't think there was any bridge that was simply built. The Board simply said, we're not persuaded. I don't think that that is not providing reasons in support of their determination. It says that specific evidence outweighs the general evidence. I thought maybe I got that — maybe I'm not remembering that right. Sure. Again, we just don't think that that is a sufficient explanation when considered on the record as a whole. We don't think — I mean, even if the Board said that, we don't think that any reasonable adjudicator could make that conclusion when all the evidence as a whole was considered. Now, because we think we should prevail under this Court's existing precedent, we don't think the Court has any need to consider whether it can or should revisit that precedent. But if the Court wants to do so, our position would be this. This is what we would ask it to hold. The unable or unwilling test does not come from the term persecution, and it is not a standalone extra-textual requirement. We believe it actually comes from the part of the refugee definition, the requirement that a fear of persecution be well-founded and the requirement in the withholding statute that the noncitizen's life or freedom would be threatened. So we think — I appreciate the argument. I'm interested in it. But is it — am I correct that we can't — we can't overrule another panel unless something has happened that calls us to? So it seems like you're getting straight to why we should look at that with a clean slate without addressing how lope or bright compels that. So maybe you — I think we need that link. Happy to provide it. Yeah. So because the Supreme Court has overruled Chevron, we think this Court is free to revisit any — any prior decision in which the panel adopted an agency's interpretation of a statute without exercising its own independent judgment. And we think lope or bright is not to the contrary. In the paragraph in question where — where lope or bright said that it was not calling into question prior cases that relied on Chevron, the Supreme Court could have only been referring to its own cases and not circuit court cases. But isn't the first question whether our precedent deferred to the agency under Chevron, whether or not it overrules that? The first question is whether our precedent was Chevron deference cases. And I don't — looking — looking at the cases beginning with M.A. and Crespin and Malani, I think, I don't see that any of them on this issue maybe — tell me if I'm wrong. I'd be interested in your views on that, how any of those give Chevron deference to the board. Sure. Well, I believe — well, M.A. went on bonk, as does Lopez-Sortos. So I'm not sure those — those panel decisions are still precedential. But looking — looking at Muliani, which seems to be the first time that this Court squarely considered the question, we acknowledge that Muliani did not explicitly cite Chevron, but nor did the Court exercise its independent judgment. We think Muliani went even beyond Chevron by treating the board's interpretation as though it was itself binding, almost like vertical star — vertical star decisis in reverse. And we also think there's some tension between Muliani and Portillo-Flores because while the former identified the term persecution as the source of the unable or requirement, Muliani did, Portillo-Flores treated it as — treated them as entirely separate elements. So we think there's also some tension between there. Now, I will grant you that at no point has this Court said, we are — we are deferring to the board under Chevron on this issue. But at the same time, it seems clear that this Court was not doing its own independent work that — what the Supreme Court anticipated — said courts should be doing, what it said they should be doing. It was not going through the tools of statutory construction. It almost reminds me of — of the idea of federal general common law that the Supreme Court rejected in the Erie Doctrine. It — you know, it originated with the agency, of course. I'm not saying it's a judge-made doctrine. Here we have an agency doctrine. I don't think there's any dispute that the unable or unwilling test originated with the agency. And then I think just courts kind of, if not deferred to the agency, almost acted as though they were bound by the agency, as though they had no choice but to adopt this requirement. Well, it's interesting. Yeah, as you point out, none of those cases say they are deferring. In Crispin, you know, it's an interesting case because there's an example where we expressly do that on the definition of particular social groups. So when we adopt — when we follow Chevron deference, you know, we know how to do it and we do it. It sounds like what you're saying is that even if we haven't employed Chevron deference, we should revisit prior opinions that, you know, refer to other circuits, refer to our precedent, refer to the Act, you know, refer to board decisions to be sure. But I don't think Chevron said you can't do that from a persuasive standpoint. Sure. What I would say is this. Just as when Chevron was still good law, there was no magic words requirement. Courts said that agencies did not themselves have to cite Chevron in order for their opinions to get Chevron deference. I think the same would apply with this Court's case law. Just because this Court did not explicitly cite Chevron or Brand X, I think if it is clear from the opinion itself that it was following the lead of the agency rather than taking the lead, that it should be read as a Chevron-style opinion. With my remaining time, if I could just turn to the ineffective assistance claim. Now, if the Court agrees with us on the unable or unwilling issue, then it would only need to agree with one of our remaining arguments, the first of which is the ineffective assistance claim. And we argued that the prior attorney provided an effective assistance by failing to file a separate asylum application on Coney's behalf, the wife. The government does not really dispute that claim. Their entire argument is contained in a footnote, which simply repeats the board's assertion that the prior attorney made a strategic decision not to seek asylum for Coney. But the government doesn't make any attempt to explain what strategy prior counsel was ostensibly pursuing. And if you look at prior counsel's own explanation, it was based on the mistaken belief that asylum can only be granted if a noncitizen was subject to past persecution, as opposed to simply having a well-founded fear of future persecution. But that's not the case. Under the plain text of the statute and the regulations make clear that noncitizens can be granted asylum solely for having a well-founded fear of future persecution. And even if gang members' threats to kill Coney were not enough to qualify as past persecution, which they arguably were under this Court's precedent, I think they were certainly enough for a reasonable person in Coney's position to fear that she would be subject to future persecution. In fact, the very expert whose declaration prior counsel submitted specifically said that the gang would target both Brian and Coney if they were removed to El Salvador. And because Coney herself did not witness the murder, the only reason the gang could have threatened her was because she was a member of Brian's immediate family, which under this Court's precedent is sufficient for an asylum claim. The Court has no questions at this time. I'll reserve for rebuttal. Thank you, Mr. Winograd. Thank you, Your Honors.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., Nicole G. Berner